**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

YVONNE E. PERK,

    **Plaintiff,**

v.                                              **CIVIL ACTION NO. 4:06cv127**

**JON MARSH WORDEN,
and
CANTOR & CANTOR, LLP,**

    **Defendants.**

*MEMORANDUM OPINION & ORDER*

Yvonne E. Perk ("Plaintiff") alleges that Jon Marsh Worden ("Worden") and Cantor & Cantor, LLP ("Cantor") (collectively "Defendants") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. (2000) ("FDCPA"). Plaintiff also alleges a claim of intentional infliction of emotional distress against Defendants. This matter now comes before the Court on Motion of Defendants pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to Dismiss Plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Having carefully reviewed the parties' pleadings, the Court finds this matter ripe for judicial determination. For the reasons below, Defendants' motion to dismiss both Plaintiff's FDCPA claim and intentional infliction of emotional distress claim is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

In June 2002 Plaintiff incorporated a business under the name Fish Scents, Inc. ("Fish Scents"). On October 20, 2002, Plaintiff received an application for a corporate credit card with First Equity Card Corporation ("First Equity"). Plaintiff applied for the credit card in the name of Fish Scents and signed the application as the president of Fish Scents. Plaintiff alleges that she used the credit card for personal, family, and/or household purposes.

First Equity retained Cantor to collect the debt on the Fish Scents credit card. Worden is an employee/partner of Cantor. On October 14, 2005, Defendants filed a Warrant in Debt against Plaintiff personally in the City of Richmond. On November 15, 2005, Defendants filed a second Warrant in Debt against Plaintiff personally in the City of Richmond. Plaintiff alleges that the first Warrant in Debt listed an incorrect address for Plaintiff when Defendants knew or should have known the correct address, and that the second Warrant in Debt listed the correct address. Plaintiff in fact lived in Yorktown, Virginia. Plaintiff further alleges that Defendants knew that Plaintiff had never resided in the City of Richmond and that Defendants knew that the credit card application was not signed by Plaintiff in the City of Richmond.

After receiving the second Warrant in Debt, Plaintiff called Worden. Plaintiff alleges that Worden became hostile and misrepresented that Plaintiff was personally liable on the debt. Plaintiff further alleges that she requested that venue be transferred to Yorktown, Virginia. Worden denied this request.

On December 22, 2005, Plaintiff traveled to Richmond and requested that venue be transferred to Yorktown. The court agreed to transfer venue. On December 24, 2005, Plaintiff received a notice that a hearing would be held in Yorktown General District Court on January 24,

2006 in order to set a trial date. On January 19, 2006, Plaintiff received a letter from Worden stating that he would be unavailable on January 24, 2006, but listed the dates when he would be available for a trial. Plaintiff responded, and Worden filed a motion requesting trial on April 28, 2006.

Plaintiff alleges that despite the prior communications concerning the trial date, Worden or Worden's agent appeared before the court in York County and requested a default judgment hearing. A default judgment hearing was scheduled for February 21, 2006. Worden appeared at this hearing and obtained a default judgment against Plaintiff. Plaintiff alleges that she did not receive notice of the default judgment hearing.

Plaintiff filed the instant complaint on September 27, 2006. Defendants filed a motion to dismiss on October 23, 2006. Plaintiff filed a response on December 4, 2006, with a motion for enlargement of time. The Court granted the motion for enlargement of time on December 20, 2006. Defendants replied to Plaintiff's response on December 12, 2006.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Although courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference, *see Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985), courts will favorably construe the allegations of the complainant, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), and assume that the facts alleged in the plaintiff's complaint are true. *See McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). A court will only grant a motion to

dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Johnson v. Mueller*, 415 F.2d 354, 354 (4th Cir. 1969).

### III. DISCUSSION

**A. Fair Debt Collection Practices Act Claims**

Plaintiff alleges multiple violations of the FDCPA, including but not limited to failure to provide her with proper notice of debtor's rights, improperly filing the Warrants in Debt in Richmond, taking adverse action before validating the debt, and utilizing debt collection measures to harass her. Defendants argue that this Court lacks subject matter jurisdiction and that Plaintiff's FDCPA claim is inadequate because the FDCPA does not apply to commercial debt and in this case there was never an offer for Plaintiff to incur debt for household purposes. Defendants note the Business Cardholder Agreement that allegedly went with the corporate credit card application forbid Plaintiff from incurring personal consumer debt.

The FDCPA was enacted by Congress for the purpose of protecting consumers from "abusive, deceptive, and unfair" debt collection practices. 15 U.S.C. § 1692(a); *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87 (4th Cir. 1994). The statute defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5). As the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") has stated, case law interpreting this definition is "sparse." *Mabe*, 32 F.3d at 88. The Fourth Circuit has provided some guidance,

however. In *Mabe*, the Fourth Circuit held that Virginia child support obligations were not debts within the meaning of the FDCPA. *Id.* The Fourth Circuit reasoned that child support obligations were not "debts" because "they were not incurred to receive consumer goods or services." *Id.*

In *Mabe*, the Fourth Circuit cited several other cases with approval in its analysis of the FDCPA term "debt," including *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067 (9th Cir. 1992), *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir. 1987), and *Staub v. Harris*, 626 F.2d 275 (3d Cir. 1980). *Staub* held that tax obligations are not debts within the meaning of the FDCPA. *Staub*, 626 F.2d at 279. In response to the *Staub* defendants' argument that the "transaction" component of the definition of "debt" implies a contractual relationship, the *Staub* court stated it did not need to decide whether a contractual relationship was always required but held that, "[A]t a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." *Id.* at 278. In *Zimmerman*, the United States Court of Appeals for the Third Circuit held that a transaction leading to a debt under the FDCPA involves "the offer or extension of credit" to a consumer. *Zimmerman*, 834 F.2d at 1168. Finally, in *Bloom*, the United States Court of Appeals for the Ninth Circuit held that an informal loan between two friends was a business loan so that the FDCPA was not applicable. *Bloom*, 972 F.2d at 1069. The *Bloom* plaintiff borrowed the money to invest in a software company. *Id.* In arguing that the loan in question was personal rather than commercial, the plaintiff pointed toward the informal nature of the loan and the fact that the lender's motivation in lending the money was personal rather than commercial. *Id.* at 1068. The *Bloom* court stated that, "[t]he Act characterizes debts in terms of end uses," and that, "Neither the

lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry." *Id.*

Other cases discussing this issue have looked to analogous provisions of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (2000) ("TILA") for guidance. *Id.* The United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit") has held that in determining whether a transaction is consumer or commercial in nature, "We must examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether this transaction was primarily consumer or commercial in nature." *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980). In *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 461-63 (5th Cir. 1999), the Fifth Circuit dealt with a claim that the TILA did not apply because the extension of credit at issue, involving the purchase of a truck, was for a commercial purpose. The Fifth Circuit held that, "resolution of this issue involves a factual determination of [plaintiffs'] purpose in purchasing the gold truck . . . ." *Id.* at 462. In short, courts have looked to the substance of transactions to determine whether they fall under the ambit of consumer protection statutes.

The instant case involves "debt" incurred as the result of the use of a credit card. Plaintiff alleges using Fish Scents' corporate credit card for personal purposes. As the cases cited above indicate, the FDCPA is concerned with the substance of the transaction as opposed to the form. Plaintiff alleges that the debt was incurred for personal use, and at this stage of the proceedings that is sufficient to properly state a claim. It is worth noting that the debt at issue was not actually incurred until Plaintiff used the card, as opposed to when Plaintiff applied for the card. Although Plaintiff applied for a corporate card, she did not incur the debt until it was used for her personal purposes. By way of illustration, the definition of "credit card" from Regulation Z's

interpretation of the TILA is, "any card, plate, coupon book, or other single credit device *that may be used from time to time to obtain credit*." 12 C.F.R. § 226.2(a)(15) (2006) (emphasis added). The Fish Scents card was not used to obtain credit until Plaintiff used it for her personal purposes; therefore, the debt was personal at the moment it was incurred. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872, 874-75 (7th Cir. 2000) (holding that the moment when the debt is incurred is the relevant time for determining its nature). The FDCPA's definition of "debt" includes "any obligation . . . arising out of a transaction" where the subject of the transaction is "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The Plaintiff alleges that the "debt" in the instant case arose out of transactions where the subject was for personal purposes. Plaintiff may well have violated the terms of the corporate credit card agreement by incurring personal debt with it, but that fact, even if true, cannot change the character of the debt and take it out of the FDCPA's jurisdiction.

Defendants also attempt to argue that the FDCPA's "bona fide error" defense applies in that it is evident on the face of Plaintiff's complaint that Defendants lacked the intent required under the FDCPA. The "bona fide error" defense provides that, "A debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Plaintiff responds that Defendants knew or should have known the nature of the debt. The Court is not convinced that "the face of the complaint clearly reveals the existence" of the bona fide error defense, as would be required for purposes of a motion to dismiss. *Brooks v. City of Winston-*

*Salem*, 85 F.3d 178, 181 (4th Cir. 1996). Plaintiff's complaint is legally sufficient on its face to state a claim under the FDCPA.

**B. Intentional Infliction of Emotional Distress Claim**

Defendants argue that Plaintiff has failed to properly state a claim for intentional infliction of emotional distress. The elements of intentional infliction of emotional distress in Virginia are: "[1] the wrongdoer's conduct is intentional or reckless; [2] the conduct is outrageous and intolerable; [3] the alleged wrongful conduct and emotional distress are causally connected; and, [4] the distress is severe." *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 162 (1991). Defendants challenge the second and fourth elements.

Defendants argue that the alleged conduct in this case does not meet the level of outrageousness required to state a claim for intentional infliction of emotional distress. Under Virginia law, tortious or criminal intent is insufficient, and malice or conduct worthy of punitive damages is likewise insufficient. *Id.* at 27, 400 S.E.2d at 162. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d (1965), *quoted in Russo*, 241 Va. at 27, 400 S.E.2d at 162.

In the present case, Plaintiff has alleged that Defendants knowingly filed state actions against her in an incorrect venue, that Worden was verbally abusive to her on the telephone, and that Worden blatantly lied to her in order to secure a default judgment in state court. Virginia courts have held that "[i]nsensitive and demeaning conduct," including verbal abuse, does not rise to the level of extreme or outrageous conduct required to state a claim for intentional

8

infliction of emotional distress. *See Harris v. Kreutzer*, 271 Va. 188, 205, 624 S.E.2d 24, 34 (2006). However, this case involves more than abusive language. Plaintiff alleges that Worden, a licensed attorney, blatantly lied to her and secured a default judgment against her when he knew she was actively contesting the debt. "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second) of Torts § 46 cmt. d (1965), *quoted in Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974). Taking Plaintiff's allegations as true for the purposes of the motion to dismiss, the Court finds that a reasonable jury may find the actions in question to be extreme or outrageous enough to ground liability for intentional infliction of emotional distress.

  Defendants also argue that Plaintiff has not alleged sufficient damages for intentional infliction of emotional distress in that Plaintiff has not alleged severe enough injuries. Indeed, in *Russo*, the Virginia Supreme Court affirmed dismissal of a claim for intentional infliction of emotional distress where the plaintiff "alleged that she was nervous, could not sleep, experienced stress . . . withdrew from activities, and was unable to concentrate at work." *Russo*, 241 Va. at 28, 400 S.E.2d at 163. These are very similar allegations to those in the instant case. However, the Fourth Circuit in *Hatfill v. New York Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1619 (2006), held that in federal court, under Federal Rule of Civil Procedure 8, plaintiffs do not have to plead emotional distress with the particularity required in Virginia courts. In *Hatfill*, relatively simple allegations of severe emotional distress were sufficient to state a claim for intentional infliction of emotional distress. *Id.* Therefore, Plaintiff has adequately stated a claim for intentional infliction of emotional distress in the instant case.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss both Plaintiff's FDCPA claim and Plaintiff's intentional infliction of emotional distress claim.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

                                                                                 _____/s/_____
                                                                            Raymond A. Jackson
                                                                            UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 23, 2007